RECEIVED
IN LAKE CHARLES, LA
FEB - 6 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| HARRY RUTLAND | CIVIL ACTION NO. 05-1430 |
| VS. | SECTION P |
| LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, ET AL | JUDGE MINALDI<br>MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* by *pro se* plaintiff Harry Rutland on August 1, 2005. Plaintiff is currently incarcerated at C. Paul Phelps Correctional Center (CPP), in DeQuincy, Louisiana. Plaintiff complains that he was a victim of sexual assault and harassment, and cruel and unusual punishment as a result of a strip search conducted by an untrained officer at CPP. Plaintiff names the following as defendants herein: the Louisiana Department of Public Safety & Corrections; DOC Secretary Richard Stalder; C. Paul Phelps Correctional Center; CPP Warden Jim Rogers; and, CPP Officers Captain Dennis Rector, Major Dennis Cloud, Lieutenant Colonel Johnny Smith, Major Herbert Ragle, Lieutenant Ogea, and Kenneth Garrett.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff states that on February 3, 2005, defendant Garrett conducted a strip search on him, wherein Garrett, using excessive force, touched plaintiff's private area and slapped him on the bare buttocks. The next day, plaintiff was questioned about the incident by defendants Smith, Ragle, Cloud, Rector, and Ogea, all of whom were on duty when the alleged violation occurred. Plaintiff

complains that none of these individuals attempted to determine the extent of his medical needs nor did they contact medical personnel, despite that he was showing signs of emotional distress. Plaintiff also alleges that the defendants failed to establish a sexual assault prevention program, and failed to train and supervise CPP Officers on the proper strip search procedures. Further, plaintiff claims that the strip search itself was unconstitutional. More specifically, plaintiff states that all inmates working on a road crew must submit to a strip search upon their return to CPP, and that the "blanket, across-the-board strip search policy...is unnecessary to further any security interests at the prison facility, and are conducted by the prison staff without any guideline to ensure that the searches are conducted only upon those the prison staff had probable cause to believe are carrying contraband or weapons." [Doc. #1, pg. 5]. In regard to these claims, plaintiff provided documentation that he exhausted the available Administrative Remedy Procedure.[1]

As a result of the above, plaintiff claims that he suffered emotional injury, anguish, and trauma. As relief, plaintiff seeks to "permanently enjoin the Louisiana Department of Public Safety & Corrections and its officials and employees from continuing its unconstitutional practice of

---

[1] On or about February 3, 2005, plaintiff filed ARP #2005-0131 based upon the same allegations contained in his present complaint. Plaintiff received a first step response to the ARP dated March 30, 2005, which stated that visual body cavity searches are authorized on inmates entering the compound after working outside the compound. The response noted that the search was conducted in a private setting with one other staff person present, and that Officer Garrett was wearing the appropriate gloves. The response stated that Officer Garrett was in training at the time the incident occurred, and was acting in good faith in performing a diligent search. The response acknowledged that the inmate is usually the person who moves body parts in a visual body cavity search, and that the officer normally does not touch the inmate's body parts but rather instructs the inmate on what actions are required. However, the response stated that there was nothing in the search regulations that prohibited a staff member from having contact with the external body parts, and that the officer now had a better understanding of CPP's search procedures. The response regretted any embarrassment to Rutland, and stated that the matter had been addresses, corrected, and was closed. Plaintiff was not satisfied with this response because Officer Garrett was still a member of CPP's staff and there had not been any disciplinary actions taken against him. The second step response, dated May 18, 2005, denied plaintiff's request for relief based upon the findings in the first step response.

2

utilizing inadequately trained staff and procedures which subjected plaintiff to unreasonable risks of harm, injury, and suffering, humiliation, embarrassment, mental anguish, degradation, sexual assault/battery and punishment." [Doc. #1, pg. 18]. Plaintiff also prays that the court award $75,000.00 in compensatory damages, $200,000.00 in punitive damages, interest, costs, and attorney's fees.

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous,[2] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1). A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under § 1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*,

---

[2] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

923 F.Supp. 931, 942-43 (S.D.Tex.1996).

A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. With these standards in mind, the court has evaluated the substantive claims asserted by the plaintiff. The court finds that plaintiff's complaint specifically details his theory of liability, and the thoroughness of the complaint convinces the court that plaintiff need not be afforded the opportunity to amend. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated herein, that his claims should be dismissed.

As previously detailed, plaintiff seeks compensatory, injunctive, and punitive damages as a result of the alleged constitutional violations. Plaintiff's prayer for compensatory damages, based upon the actions (or inactions) of the defendants, implicates the Eighth Amendment's prohibition against cruel and unusual punishment. However, under the Prison Litigation Reform Act, a prisoner cannot recover for emotional or mental damages suffered while imprisoned without a showing of physical injury. 42 U.S.C. § 1997e(e) (2004); *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). Plaintiff no where suggests that the "cruel and unusual punishment" he has endured resulted in a physical injury; therefore, § 1997e(e) precludes his claim. *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003), *cert. denied*, ___ U.S. ___, 124 S.Ct. 2071, 158 L.Ed.2d

623 (2004).

Plaintiff's claims for injunctive relief must likewise fail. More specifically, plaintiff alleges that the search, itself, violated his Fourth Amendment rights. In this regard, the court finds the analysis in *Elliott v. Lynn*, 38 F.3d 188 (5th Cir. 1994) applicable to the present case. In *Elliot*, the plaintiff/prisoner who was subjected to a visual body cavity search in the presence of other inmates, guards, and non-searching officers, brought a § 1983 claim alleging that the search violated his Fourth Amendment rights. Although the plaintiff conceded that the scope and justification for the search were reasonable, he nevertheless argued that the manner and place of the search were unreasonable. The Fifth Circuit, in affirming the District Court's dismissal of plaintiff's claims, found that the search did not violate his Fourth Amendment right to be free from unreasonable search and seizure, nor did it deprive him of a state created liberty interest without due process of law (Fourteenth Amendment claim). In regard to searches, the court stated:

> A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs. *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978). The Fourth Amendment, however, requires that 'searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. Because a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden.' *Lilly*, at 1244, 1245. The test for reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct 1861, 1884, 60 L. Ed. 2d 447 (1979). We have interpreted this statement of reasonableness as striking a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.' *Watt v. City of Richardson Police Dep't.*, 849 F.2d 195, 196 (5th Cir. 1988). We are required, as a matter of both common sense and law, to accord prison administrators great deference and flexibility in carrying out their

responsibilities to the public and to the inmates under their control, including deference to the authorities determination of the 'reasonableness of the scope, the manner, the place and the justification of a particular policy.' *Hay v. Waldron,* 834 F. 2d 481, 486 (5th Cir. 1987). Furthermore, we have found that when evaluating the security policies adopted by the prison administrators, the court is not required to apply a 'least restrictive means' test. *Hay,* 834 F.2d at 485. *Elliott,* at 189, 190, and 191.

As can be seen from the above, there is no question but that the court must give deference to the decisions made by prison authorities in matters concerning security issues within the prison. CPP's policy of searching inmates upon their return to the prison from outside work assignments is exactly the type of issue that *Elliott* and the cases cited therein were meant to address. It is evident that the policy is in place to thwart any attempts to bring contraband into the prison by inmates that have been off of the compound, thus increasing the opportunity to acquire (and conceal) prohibited and potentially dangerous items. The need to protect prison staff and inmates from such occurrences is without a doubt a legitimate penological need. Further, plaintiff's own pleadings and attachments show that the scope of the search in question was reasonable (inmates returning to the prison facility after being on outside work assignments), that the location (a private setting with the searching officer and one other staff person present) was reasonable, and despite plaintiff's protestations otherwise, that the manner in which the search was conducted was reasonable under the circumstances. In this regard, the prison officials, while noting that the searching officer's action was not prohibited, recognized that he deviated from normal procedures, and they addressed the situation. As stated in *Lilly,* the burden of proving reasonableness is light, and the facts of the present case certainly do not warrant a deviation from this standard.

Finally, plaintiff's punitive damage claim has no merit as punitive damages can be awarded under section 1983 only if official conduct is motivated by "evil intent" or demonstrates "reckless

6

or callous disregard for a constitutional right." *Smith v. Wade*, 410 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed. 2d 632 (1983). Even liberally construing plaintiff's complaint herein, his allegations in no way rise to the level necessary to award punitive damages.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted.[3]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED**, in Chambers, at Lake Charles, Louisiana, this 6th day of February, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[3] To the extent that plaintiff asserted any state law claims over which he requested that this court exercise pendent jurisdiction, such request is denied.

7